## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IRMA CASTILLO,** | : | **CIVIL ACTION NO. 3:19-CV-1628** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PROGRESSIVE INSURANCE,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Irma Castillo asserts two claims against her automobile insurer, defendant Progressive Insurance ("Progressive").  Castillo claims that Progressive breached her insurance policy and that it made a settlement offer in bad faith in violation of 42 PA. CONS. STAT. § 8371.  Progressive moves for summary judgment on Castillo's statutory bad-faith claim.

## I.   Factual Background & Procedural History[1]

Castillo was a passenger in a vehicle involved in a motor vehicle accident on June 12, 2015.  (Doc. 25-1 ¶ 1; Doc. 27-1 ¶ 1).  The vehicle Castillo occupied was insured by GEICO; Castillo was insured under policies issued by Progressive and by

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the movant's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 25-1, 27-1).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

Allstate Insurance Company ("Allstate"); and the driver of the vehicle that struck the one in which Castillo was travelling was uninsured. (See Doc. 25-1 ¶¶ 2, 10-11; Doc. 27-1 ¶ 2). The Progressive policy provides up to $15,000 in uninsured motorist ("UM") coverage per person, with stacking for three vehicles, for total UM coverage of $45,000 per person.[2] Castillo elected limited tort coverage, meaning she cannot recover for noneconomic losses such as pain and suffering unless she establishes that she sustained a "serious injury" in the accident. (See Doc. 25-1 ¶ 5; see also Doc. 25-2 at 3, 20, 21).[3]

On April 29, 2019, Castillo, through counsel, submitted a demand letter requesting that Progressive pay its full UM policy limits for her injuries arising from the June 2015 accident. (See Doc. 25-1 ¶ 7; Doc. 27-1 ¶ 7; see also Doc. 25-4 at 2-9). The demand letter outlined counsel's belief that Castillo's accident-related injuries would pierce the limited-tort threshold, described the nature of her injuries and her treatment, and noted that Castillo's multiyear delay in seeking treatment "was due

---

[2] The parties dispute the total UM coverage available under the Progressive policy. Progressive claims the policy provides $15,000 in UM coverage per person and $30,000 per accident, stacked for *two* vehicles, for total coverage of $30,000 per person and $60,000 per accident. (Doc. 25-1 ¶¶ 3-4). Castillo contends that her UM coverage is stacked for *three* vehicles, increasing the total coverage to $45,000 per person. (Doc. 27-1 ¶¶ 3-4). The dispute stems from the fact that, while the policy lists three "covered autos" on its declarations page, only two of the three vehicles carried UM coverage. (See Doc. 25-2 at 3; Doc. 25-3 at 3, 6). Because Castillo is the nonmovant, and because the dispute is not material to her bad-faith claim, we will assume without deciding that her assertion is correct and that her stacked UM policy limits were $45,000 per person and up to $90,000 per accident. (See Doc. 27-1 ¶¶ 3-4).

[3] For ease of reference, we cite to all record evidence by the page number on the header supplied by our Case Management and Electronic Case Filing system.

to the fact that she was pregnant at the time of the crash and had to wait for delivery of her child and additional time to pass before she could take medications and [receive] treatment." (<u>See</u> Doc. 25-4 at 2-9).

Progressive opened a claim on Castillo's behalf on May 14, 2019, (<u>see</u> Doc. 25-1 ¶ 8; Doc. 27-1 ¶ 8; <u>see also</u> Doc. 25-3 at 2), and claim representative Michael McHale was assigned to her case, (<u>see</u> Doc. 25-1 ¶ 9). In reviewing the file, McHale noted the GEICO and Allstate policies and contacted representatives with those insurers to acquire information about their policies and any claims paid. (<u>See</u> <u>id.</u> ¶¶ 11-14, 16-22). McHale learned that the GEICO and Allstate policies both had $15,000 UM limits and that, after Castillo's counsel threatened litigation, GEICO "made a business decision to tender their minimal $15,000 UM policy limit." (<u>Id.</u> ¶¶ 18, 22). According to McHale's notes, the GEICO representative indicated that, even though GEICO paid its policy limits, it had "doubts about [Castillo's] injuries due to delays" and thought her "injuries would not pierce the limited tort threshold." (<u>See</u> <u>id.</u> ¶ 17; <u>see also</u> Doc. 25-3 at 4). Regarding his conversation with the Allstate representative, McHale wrote: "Both of us agree that atty's argument of no tx due to pregnancy does not make sense as loss occurred and it appears [Castillo's] pregnancy was conceived close to 5 mos. later." (<u>See</u> Doc. 25-3 at 5).

McHale then reviewed Castillo's medical records and concluded that Castillo's injuries likely would not breach the limited tort threshold to permit

recovery of pain and suffering damages. (<u>See</u> Doc. 25-1 ¶¶ 25, 33).[4]  McHale noted that Castillo was seen in the emergency room for neck, shoulder, and head pain on the day of the accident; that she saw her family doctor roughly four months later; and that she did not otherwise treat for accident-related injuries until late January 2017, approximately 19 months after the accident.  (<u>See id.</u> ¶¶ 26-28).  McHale also noted that, after January of 2017, Castillo attended ten physical therapy sessions "for treatment of complaints of neck and shoulder pain" and had "a visit with a neurologist due to forgetfulness and headaches," but that there were otherwise no records of treatment clearly linked to the June 2015 accident.  (<u>See id.</u> ¶ 29).  At the time of his evaluation, McHale had no information indicating that Castillo might be seeking lost wages or other economic damages.  (<u>See</u> Doc. 25-1 ¶ 30; Doc. 25-3 at 6).

McHale called Castillo's counsel on June 4, 2019, to discuss Castillo's claim. (<u>See</u> Doc. 25-1 ¶ 31).  McHale spoke with counsel's paralegal, Mariella Confair, who indicated she had authority to discuss the case and extend offers.  (<u>See id.</u> ¶ 32; <u>see also</u> Doc. 25-4 at 10).  McHale advised Confair that he did not believe Castillo's claim would pierce the limited tort threshold, noting the substantial delays in treatment and that counsel's explanation for those delays—that Castillo's pregnancy delayed

---

[4] Castillo "specifically denies" any averments in paragraphs 9 through 22 and paragraphs 25 through 32 "as to the timeliness, thoroughness, or efficacy of Mr. McHale's investigation and review of Ms. Castillo's claim," but cites no evidence in support of this denial.  (<u>See</u> Doc. 27-1 ¶¶ 9-22, 25-32).  Several of Castillo's other responses note only that a statement is "denied in part" or "denied as stated," (<u>see id.</u> ¶¶ 33-35), but, like the responses to paragraphs 9 through 22 and paragraphs 25 through 32, fail to elaborate or "include references to the parts of the record that support the" denial, <u>see</u> M.D. PA. L.R. 56.1.  To the extent a Rule 56.1 response is unsupported, we deem the corresponding fact to be uncontroverted so long as the fact is itself supported by the Rule 56 record.  <u>See id.</u>

her accident-related treatment—was inconsistent with the medical record.  (See

Doc. 25-3 at 7; see also Doc. 25-1 ¶ 33).  Nonetheless, he offered to settle Castillo's

claim for $1,000.  (Doc. 25-1 ¶ 34; Doc. 25-3 at 7).  Confair declined the offer and

requested a copy of the policy's declarations page.  (See Doc. 25-3 at 7).  McHale

obliged and asked Confair to respond with a demand if Castillo wished to continue

settlement discussions or, if suit would be filed, to provide a courtesy copy of any

filing.  (See id.)  Two days later, Confair replied to thank McHale for providing the

declarations page and added:

> Just so you are aware, [Castillo] had to leave her full time
> job at Geisinger Medical Center due to her level of pain,
> and she did so on March 15, 2019.  I have requested her
> work records to show her progression of pain and difficulty
> staying in her job.  Therefore, there will be a wage loss
> claim and a loss of future earning capacity attached to her
> overall UM claims.

(Id. at 8).

Castillo initiated this action the following day, June 7, 2019, by filing a

praecipe for writ of summons in the Court of Common Pleas of Luzerne County.

Castillo thereafter filed her complaint against Progressive, asserting one count for

breach of contract and a second count for statutory bad faith.  Progressive timely

removed the action to this court.  Following Rule 12(b)(6) motion practice and a

period of discovery, Progressive moved for partial summary judgment as to

Castillo's bad-faith claim.

## II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III.    **Discussion**

Progressive moves for summary judgment only as to Castillo's claim that Progressive acted in bad faith in making its initial settlement offer. Pennsylvania's bad-faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.  To prevail on a bad-faith claim, the insured must show that the insurer (1) "did not have a reasonable basis for denying benefits under the policy" and (2) "knew of or recklessly disregarded its lack of reasonable basis in denying the claim."  Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)); Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017).  An insured must prove bad faith "by clear and convincing evidence."  Fogel, 656 F.3d at 179 (quoting Terletsky, 649 A.2d at 688).  This "heightened standard" requires an insured to adduce evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith."  Id. (citation omitted).  The insured's burden at summary judgment is "commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial."  Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (citation omitted).

Bad faith is "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent."  Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 523 (3d Cir. 2012) (quoting Terletsky, 649 A.2d at 688).  It requires proof of more than "mere negligence or bad judgment."  Id. (quoting Frog, Switch

7

& Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999)).  To prove bad faith, the insured must establish that the insurer acted "through some motive of self-interest or ill will."  Babayan, 430 F.3d at 137 (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).

To defeat a bad-faith count, the insurer need only show that it had a "reasonable basis" for denying the insured's claim.  See Post, 691 F.3d at 522 (quoting Fogel, 656 F.3d at 179).  The insurer need not show that its conclusions or investigatory methods were "flawless."  Turner v. State Farm Fire & Cas. Co., 260 F. Supp. 3d 419, 425 (M.D. Pa. 2017) (citing Krisa v. Equitable Life Assurance Society, 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000)).  In other words, an insurer "must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."  Id.

Castillo's bad-faith claim is narrow: she asserts Progressive "acted in bad faith by failing to adequately review and evaluate [her] UM claim with respect to the June 12, 2015 motor vehicle accident . . . thus resulting in an insignificant offer to settle her claim for only $1,000.00."  (Doc. 27 at 6).  The facts underlying her claim are largely undisputed.  (See generally Docs. 25-1, 27-1); see also supra at 3 n.3.  The only question is whether Castillo has adduced clear and convincing evidence from which a juror could find that Progressive lacked a reasonable basis for, and knew of or recklessly disregarded the lack of a reasonable basis for, its $1,000 settlement offer.  See Fogel, 656 F.3d at 179 (quoting Terletsky, 649 A.2d at 688).  We conclude that she has not.

The uncontroverted Rule 56 record establishes that McHale conducted a reasonable investigation and made a reasonable settlement offer based on the information available to him.  Before making the offer, McHale noted Castillo's limited-tort election and that she had already received $15,000 from GEICO, the primary insurer; he reviewed her medical records and noted the lack of treatment proximate to the accident and lack of evidence of wage loss; and he discussed her claim with two other insurers involved in the case.  (See Doc. 25-1 ¶¶ 16-22, 25-30).  His review of the records supplied by Castillo's counsel revealed that, other than an emergency room visit on the day of the accident and a family doctor appointment four months later, Castillo did not treat for injuries alleged to be related to the accident until some 19 months later.  (See id. ¶¶ 26-29).

McHale acknowledged counsel's explanation for the delay—that Castillo could not treat or medicate immediately because she was pregnant at the time of the accident.  (See Doc. 25-3 at 5, 6, 7).  McHale was ultimately unpersuaded since the medical records reflected Castillo did not conceive until five months *after* the accident.  (See id.)  McHale noted Castillo was not treated for accident-related injuries during that five-month window, and that another six months elapsed after her child was born before she began physical therapy for complaints of neck and shoulder pain.  (See id. at 6).  Given his doubts regarding causation and the latent nature of Castillo's purported injuries, McHale offered to settle the claim for $1,000.  (See Doc. 25-1 ¶ 34; Doc. 25-3 at 7).  Importantly, McHale made clear that Progressive was open to further settlement negotiations, and he invited another demand from Castillo's counsel.  (See Doc. 25-3 at 7).  Counsel commenced this

lawsuit instead, and there is no indication in the record that further negotiations followed.

Castillo oppugns McHale's investigation in general terms, calling it "lackluster" and "uninspiring."  (See Doc. 27 at 9, 11).  However, she provides little in the way of argument—and nothing in the way of evidence—to establish that Progressive lacked a reasonable basis for its settlement offer.  The arguments that Castillo does make are unsupported by the record.  For example, she suggests that McHale acted in bad faith when he "failed to inquire as to any potential wage loss[]" claim."  (See id. at 6).  Castillo does not explain why McHale would have or should have inquired as to a potential wage-loss claim when neither her medical records nor her demand letter indicated that she was or had ever been out of work due to the accident.  Indeed, the record reveals that Castillo's legal team only alerted McHale to this aspect of her claim *after* they rejected Progressive's settlement offer.  (See Doc. 25-3 at 8).

Similarly, Castillo avers that McHale's notes "reveal a complete and utter lack of an investigation," that "[a]bsolutely no objective evaluation . . . was performed," and that McHale "simply placed telephone calls to" other insurers "and based his determinations off of those made by other insurers."  (Doc. 27 at 7).  A total failure to investigate may support a bad-faith claim.  See Brown, 860 A.2d at 501 ("Bad faith conduct also includes 'lack of good faith investigation into fact[s], and failure to communicate with the claimant." (quoting Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (alteration in original))).  But that is not what occurred here.  The claim notes demonstrate that, in addition

10

to calling two other insurance representatives involved with the case, McHale independently reviewed and took his own notes on Castillo's medical records before communicating his preliminary findings and the $1,000 settlement offer to Castillo's legal team.  (See Doc. 25-3 at 5-7).  The same notes make clear that this initial offer was not final and that Progressive was open to further dialogue.  Cf. Miezejewski v. Infinity Auto Ins. Co., 609 F. App'x 69, 71, 72 (3d Cir. 2015) (nonprecedential) (affirming summary judgment for insurer on bad-faith claim when, *inter alia*, pre-litigation settlement offers were within representative's initial valuation of claim and were not final).  Castillo has not provided evidence contradicting the notes in Progressive's claim file, nor has she identified any evidence available to McHale that she believes he ignored or arbitrarily discounted or otherwise undermines his initial findings.

At bottom, the record establishes nothing more than a legitimate disagreement over causation of Castillo's injuries and valuation of her claim.  It is well settled that genuinely disputing causation and value is not tantamount to bad faith.[5]  That Progressive did not "immediately accede to" Progressive's demand for policy limits also is not, by itself, evidence of bad faith.  See Smith, 506 F. App'x at

---

[5] See, e.g., Calestini v. Progressive Cas. Ins. Co., No. 3:09-CV-1679, 2010 WL 5437278, at *4 (M.D. Pa. Dec. 28, 2010) (no bad faith in insurer refusing to pay claim when "there is a significant dispute between the two sides as to cause, nature, and extent" of insured's injuries); Johnson v. Progressive Ins. Co., 987 A.2d 781, 785 (Pa. Super. Ct. 2009) (same when "underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of [an underinsured motorist] claim"); see also Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 137 (3d Cir. 2012) (nonprecedential) (noting that "disagreement over the amount of the settlement of [a claim] . . . is not unusual").

137; see also Yohn v. Nationwide Ins. Co., No. 1:13-CV-24, 2013 WL 2470963, at

*7 (M.D. Pa. June 7, 2013) (same at Rule 12(b)(6) stage).  Nor does Castillo's belief

that the preliminary offer was too low, without more, establish that Progressive

acted unreasonably.  See Brown, 860 A.2d at 501 ("[O]ur Courts have not recognized

bad faith where the insurer makes a low but reasonable estimate of the insured's

losses." (citing Terletsky, 649 A.2d at 688-689)); Babayan, 430 F.3d at 137 n.22

(similar)).  This is particularly true given that Progressive articulated legitimate

reasons for doubting causation; reasonably concluded the claim would not pierce

the limited-tort threshold; had not been advised of any wage-loss claim by Castillo's

legal team; and, perhaps most importantly, made clear that its offer was not final.[6]

We conclude that Castillo has failed to identify any evidence—much less clear and

convincing evidence—from which a reasonable juror could find that Progressive

lacked a reasonable basis for its preliminary settlement offer.

Castillo has also failed to adduce proof to meet the second bad-faith element,

which requires her to show by clear and convincing evidence that Progressive knew

or recklessly disregarded that it lacked a reasonable basis for its settlement offer.

---

[6] Castillo cites to Hollock v. Erie Insurance Exchange, 842 A.2d 409 (Pa. Super. Ct. 2004), as support for her view that a "low-ball offer" is indicative of bad faith.  In Hollock, the appellate court affirmed a bench verdict for the insured on a bad-faith claim when the insurance adjuster (1) misled the insured's counsel for over a year regarding coverage amounts, (2) offered an arbitrary settlement that ended up being 29 times lower than the eventual arbitration award and had no rational basis, (3) unreasonably failed to reevaluate its position upon receipt of new information, (4) failed to follow up with and deliberately ignored information from the insured's supervisor corroborating her post-accident limitations, and (5) created a "ruse" to allow the insurer time to place the insured under surveillance.  See id. at 412-13, 418.  Hollock is not only distinguishable, it also illustrates the type of clear-and-convincing proof of bad faith that is lacking here.

On this subject, she argues only that "critical information" has been redacted from McHale's notes, which, according to Castillo, "raises questions as to . . . McHale's state-of-mind with respect to the determination as to [her] UM claim." (Doc. 27 at 7). Castillo also contends that "[d]iscovery has uncovered irrefutable proof that [Progressive] acted in bad faith," and she suggests this discovery "lend[s] credence to the claim that [Progressive's] determination was baseless and made in reckless disregard of [Castillo's] right to relief." (See id. at 8-9). Castillo never tells the court exactly what this "irrefutable proof" is. We presume she means the transcript of her April 22, 2020 deposition and the report of an independent medical examination from June 15, 2020, both of which are attached to her opposition brief. (Docs. 27-7, 27-8). However, neither of those documents existed at the time of McHale's initial claim valuation. While this evidence may create a genuine dispute with respect to the cause and extent of Castillo's injuries for purposes of her outstanding breach-of-contract claim, they do not evince that Progressive knowingly or recklessly undervalued Castillo's claim in June of 2019.

At the Rule 56 stage, it is Castillo's burden to adduce evidence that Progressive knowingly or recklessly acted in bad faith; "mere suspicion" and "conclusory allegations" do not suffice. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)). On this point, Pennsylvania law is clear: "[B]ad faith must be proven by clear and convincing evidence and not merely insinuated." See Terletsky, 649 A.2d at 688 (collecting cases). On the record before the court, there

is simply no evidence from which a reasonable juror could find that Progressive knowingly or recklessly made its initial settlement offer in bad faith. Accordingly, Progressive is entitled to summary judgment on this claim.

**IV.**     **Conclusion**

We will grant Progressive's motion (Doc. 25) for partial summary judgment as to Castillo's statutory bad-faith claim. An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 15, 2021